# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TAMARA P. HIBBARD,**

        **Plaintiff,**

**-vs-**	        **Case No. 6:06-cv-1749-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument was requested but is not found necessary.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

### *I. BACKGROUND*

#### A. Procedural History

Plaintiff filed for a period of disability, and disability insurance benefits on April 2, 2004. R. 44-47. She alleged an onset of disability on January 2, 2004, due to back injury, herniated disc, and

cerebral palsy.  R. 25, 27, 71.  Her application was denied initially and upon reconsideration.  R. 36-41.  Plaintiff requested a hearing, which was held on January 25, 2006, before Administrative Law Judge Jimmy N. Coffman (hereinafter referred to as "ALJ").  R. 217-29.  In a decision dated April 25, 2006, the ALJ found Plaintiff disabled for the defined period of March 30, 2004 to September 15, 2005, and not disabled after that time.  R. 10-23.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 203-05.  The Appeals Council denied Plaintiff's request on October 5, 2006.  R. 6-9.  Plaintiff filed this action for judicial review on November 13, 2006.  Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff has cerebral palsy and complained of back and neck pain.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered only from degenerative disc disease (with no mention of cerebral palsy), which was a "severe" medically determinable impairment but not an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 18.  The ALJ determined that between March 30, 2004 and September 15, 2005, Plaintiff retained the residual functional capacity to lift/carry less than ten pounds; to stand/walk for ten to fifteen minutes at a time, should not walk on uneven or slippery surfaces; to sit for 6 hours in an 8-hour workday with an option to change positions every 10-15 minutes; to bend and stoop occasionally; could not climb ladders; and should avoid working in temperature extremes.  R. 18.  The ALJ held that beginning September 15, 2005,  Plaintiff had the residual functional capacity to lift/carry twenty pounds occasionally and ten pounds frequently; to stand/walk for about six hours in an eight hour workday; and to sit for about two hours in an eight-hour workday.  R. 21.  Although the ALJ found Plaintiff's statements regarding her limitations were credible before September 15, 2005, he found that Plaintiff's statements concerning the intensity,

duration and limiting effects of her symptoms were "not entirely credible beginning on September 15, 2005" primarily because she was "apparently able to care for a 14 month old child at home, which can be quite demanding both physically and emotionally without any particular assistance." R. 21. The ALJ held that as of September 15, 2005, the Plaintiff was capable of performing her past relevant work as a bank teller and a clerk. R. 23. Accordingly, the ALJ determined that Plaintiff was not under a disability beginning September 15, 2005. R. 23.

Plaintiff now asserts three points of error. First, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's cerebral palsy as a severe impairment. Second, she claims the ALJ erred by finding she had the RFC to perform past relevant work to treating doctors' statements. Third, she argues that the ALJ erred by not obtaining vocational expert (VE) testimony, because Plaintiff suffered non-exertional impairments. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## *II.  STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A. Severe Impairment of Cerebral Palsy

Plaintiff argues that the ALJ erred in failing to find that her cerebral palsy was a severe impairment. The Commissioner contends that the evidence indicates that plaintiff was able to perform work, including her past work as a bank teller, with her cerebral palsy.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff argues that the ALJ failed to consider the Plaintiff's cerebral palsy as a severe impairment and offered no explanation for his finding despite the record clearly showing that the Plaintiff suffers with a severe impairment of cerebral palsy. Plaintiff suffers from spastic diplegic cerebral palsy, with marked spasticity in her lower extremities with rigidity, decreased strength,

hyper-reflexic reflexes, and a spastic gait. R. 152, 159-60. The Commissioner's argument on the ALJ's failure to address Plaintiff's cerebral palsy consists of a mere two sentences: "Plaintiff herself noted that her cerebral palsy was mild and that she had successfully worked with the condition. R. 86, 223. The medical evidence does not show that this condition changed after she hurt her back in December 2003. Doc. No. 12 at 9.

The Commissioner's argument is flawed for two reasons. First, "[g]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *See Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003); *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001); *Fargnoli v. Massanari,* 247 F.3d 34, 44 n.7 (3d Cir. 2001). The ALJ failed to consider Plaintiff's cerebral palsy – he did not even address why Plaintiff's cerebral palsy was not a severe impairment, despite citing the consultative examiner's diagnosis of cerebral palsy. R. 19. The Commissioner cannot justify this glaring omission based on grounds that the ALJ did not even consider.

Second, the grounds cited by the Commissioner, that Plaintiff's cerebral palsy was "mild" misconstrues the medical record and Plaintiff's testimony before the ALJ. Plaintiff testified that although she had a "mild" case, *i.e.*, spastic only from the hips down – nevertheless, the condition affected her gait, balance, and required that she use a cane – "being that now [she] ha[s] back problems it agitates it even more" when she walks. R. 223. It throws her "off balance." R. 223. "Everything kind of compiles and makes it difficult to walk and sit and stand." R. 223. She always "had trouble walking, but never had the pain, but the back pain[1] compiled with the cerebral palsy is

---

[1] The ALJ's statement in the section discussing her RFC that "[t]he claimant testified that she experienced no pain with regards to her cerebral palsy" is misleading when Plaintiff's testimony is considered in its entirety.

a bad mix," in that the pain runs down to her legs, which are the extremities affected by the cerebral palsy. R. 223-25.

The ALJ failed to consider the medical evidence of Plaintiff's cerebral palsy. Dr. Cooper, the consulting orthopedist, on whose report the ALJ otherwise relied, found that Plaintiff had cerebral palsy with resulting severe spastic paraparesis involving both lower extremities. R. 19; 171 (Cooper report). The CE noted that Plaintiff had spastic paraparesis as a result of cerebral palsy; she had "marked spasticity in her knees and ankles"; and range of motion of the ankles was limited with mild swelling. R. 169-70. Plaintiff had multiple surgeries involving her calf tendons between 1975 and 1992. R. 169. Plaintiff walked with a cane, and at times, came to medical appointments in a wheelchair; thus, the cerebral palsy undoubtedly interfered with her ability to walk, lift, balance, and carry items. *See, e.g., Walzer v. Chater*, 1995 WL 791963 (S.D.N.Y. Sept. 26, 1995) (plaintiff's cerebral palsy was a "severe impairment" but did not meet or equal listing where plaintiff was limited from avoiding prolonged standing and no lifting); *Pearson v. Barnhart*, 2005 WL 1397049, *6 (E.D. Tex. May 23, 2005) (plaintiff's cerebral palsy was a "severe impairment" but did not meet or equal listing where plaintiff had trouble walking and climbing but normal brain and spine function).

The ALJ failed to address Plaintiff's cerebral palsy or explain why it was not severe in the face of medical evidence of her condition; thus, the ALJ's decision was not based on substantial evidence. The ALJ's decision could be reversed on this basis alone.

### B.     Dr. Afong's opinion

Plaintiff argues that the ALJ should not have found her able to perform her past relevant work by rejecting the portion of Dr. Afong's opinion that limited her sitting/standing to two hours per day. The Commissioner responds that the ALJ's rejection of Dr. Afong's opinion was based on substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff argues that the ALJ failed to attribute controlling weight to Dr. Afong's opinion even though it was supported by well documented findings of record. The ALJ stated in partially rejecting Dr. Afong's RFC assessment of Plaintiff:

> The undersigned has considered and accords great weight to the opinions of Dr. Afong who opined that the claimant could lift/carry 20 pounds occasionally; could sit for 2 hours in an 8-hour workday; could stoop, kneel, and reach overhead occasionally; must avoid even moderate exposure to marked changes in temperatures and humidity; must avoid climbing, balancing, crouching, and crawling, and such hazards as unprotected heights and moving machinery. Except for the ability to stand/walk for 2 hours in an 8-hour workday, Dr. Afong's opinion is consistent with the established residual functional capacity beginning September 15, 2005.

R. 22 (citing 190-92).

Plaintiff contends that the ALJ erred by failing to justify his rejection of Dr. Afong's two-hour limitation on Plaintiff's ability to stand and walk. Plaintiff contends Dr. Afong's opinion of Plaintiff's

-7-

decreased stride and cadence in walking is supported by the record and points to treatment notes and the exam findings of the consulting examiner, Dr. Cooper, who affirmed that Plaintiff ambulates with an abnormal gait and assessed decreased strength. R. 171, 186.

The Commissioner contends that the ALJ's findings were based at least in part on a September 15, 2005 assessment from Dr. Afong, one of plaintiff's treating physicians at The Back Center. R. 190-91. In the September 15, 2007 Physical Capacities Evaluation, Dr. Afong indicated that Plaintiff would have moderate pain defined on the form as constituting a significant handicap with sustained attention and concentration which would eliminate skilled work tasks; could lift or carry up to 20 pounds occasionally, and frequently lift or carry up to 5 pounds. R. 191. Dr. Afong indicated Plaintiff could sit for only two hours and stand for only two hours. R. 190-91.

The ALJ rejected only the two-hour sit/stand limitation of Dr. Afong's assessment because, the Commissioner contends, he viewed it as inconsistent with Dr. Afong's treatment notes and evidence of plaintiff's activities. R. 21-22. The ALJ noted:

> On September 28, 2005, Dr. Afong reported that the claimant was tolerating and using the Hydrocodone on a limited basis, primarily at night to help her get rested. Upon physical examination, the doctor reported that the claimant was in no acute distress, deep tendon reflexes were 1+ at patella and Achilles, absent straight leg raise bilaterally, and strength in the lower limbs was grossly 4/5. Furthermore, on a follow-up visit, Dr. Afong reported that the claimant was alert and oriented times 3 and not taking her medicines that often. Moreover, the claimant testified that she lives with her husband and an adopted child, 14 months old. She cooks, dusts, and goes to movies at times. The claimant is apparently able to care for a 14 month old child at home, which can be quite demanding both physically and emotionally, without any particular assistance.

R. 21. The ALJ, and the Commissioner in turn, misrepresent how Plaintiff described her daily activities and omit the references in Dr. Afong's reports that describe continued limitations and credible pain, unchanged since March 2004 - September 14, 2005, the period for which the ALJ found Plaintiff was disabled.

-8-

Plaintiff testified that as to household chores, she does "a few things; I'm not able to do a whole lot. I have trouble vacuuming, mopping. But yeah, I try to keep up with some of that. Usually my sisters come and help me out." R. 226. She can dust and do some of the cooking, but she tries not to cook or take a long time cooking meals, mainly because of the fatigue. Her fatigue level is high and she takes a nap during the day when her son takes one. R. 226. She goes to the movies every now and then, but the chairs are not good for her back and she gets really uncomfortable. R. 227.

Dr. Afong's treatment notes from August and September 2005 indicate very little change in Plaintiff's condition. A June 2004 MRI showed a broad based posterior disk protrusion, and moderate central canal stenosis at C4-5, C5-6, but in the left C6-7, severe left foraminal stenosis. R. 165, 168. In March 2005, Dr. Afong noted Plaintiff remained symptomatic from the cervical/neck standpoint primarily and had under gone physical therapy without any significant improvement. R. 185. Plaintiff received epidural injections in April 2005. R. 180-183. She did have pain relief for a few days from the epidurals, but they gave her headaches and the pain came back to baseline. R. 199, 202. She also did not take her pain medication "that often" because it tended to make her sick. R. 199. As of August 29, 2005 (just 16 days before September 15, 2005, the date after which the ALJ found Plaintiff was no longer disabled), Plaintiff complained she was constantly sore in the neck, as well as in the lower back with radiating symptoms into the left leg. R. 202. She said she had to constantly change position every 15 minutes, sitting, standing or walking. R. 202. She usually had to lie down at least once a day for about two hours when her son takes a nap, and she went to bed at 8:00 p.m. from fatigue. R. 202. Although two of the medications relieved some of the discomfort, both of them caused cognitive side effects. R. 202. Dr. Afong opined that Plaintiff remained symptomatic despite epidural injections and history of prior surgery. R. 202.

In September 2005 (the notes on which the ALJ relied), Plaintiff tolerated the hydrocodone, usually taking it just at night; she was still limited in her activities and had to change positions frequently, every 15 minutes. R. 201. Her tolerance for prolonged activity was "limited." R. 201. *"She will require these medications indefinitely given residual symptoms until further interventional treatment at which time she will be tapered off the medication."* R. 201 (emphasis added). One month after she was purportedly no longer disabled, by October 31, 2005, she continued to have cervicalgia and lumbalgia and lower extremity radicular symptoms. R. 200. She had complications with Lortab like all other narcotics and only used it at nighttime before bed – the side effects were new complications. R. 200. By December 2005, Plaintiff was not better; she was still suffering from a herniated disk at C4-5 and C5-6 and associated central and foraminal stenosis. R. 199. The notes indicate that she was not taking the medicines that often, not because her pain diminished, but because they tended to make her sick. R. 199. She requested the epidural shots again, even though they gave her headaches. R. 199.

The Court finds that the ALJ's decision was not based on substantial evidence. The ALJ fails to explain what medical evidence contradicts Dr. Afong's opinion in September 2005 that Plaintiff could only stand for two hours in an eight-hour day. In partially reject Dr. Afong's opinion, the ALJ failed to cite any other medical reports.

The ALJ also ignored the limitation of Dr. Afong and the consulting orthopedist, that Plaintiff would have to alternate between sitting and standing and/or change positions every 10-15 minutes. R. 171, 202. The alternation limitation and Plaintiff's non-exertional limitation of pain require the testimony of a vocational expert.

"[W]hen both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to

preclude a wide range of employment at the given work capacity level indicated by the exertional limitations." *Syrock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  The ALJ did not make such specific findings in this case.

On remand, the ALJ must make specific findings regarding whether Plaintiff's cerebral palsy is a severe impairment, specific findings if he chooses to reject Dr. Afong (or another treating physicians opinion), and because non-exertional limitations are present, the ALJ must utilize the testimony of a vocational expert.

### *IV. CONCLUSION*

For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 12, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record